UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEM DENISOV,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>    Defendants. | Case No. 23-cv-06442-SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 23 |

Before the Court is plaintiff's motion for summary judgment. Dkt. No. 12 ("Pl.'s Mot. Summ. J."). Defendants oppose and have filed a cross motion for summary judgment. Dkt. No. 23 ("Defs.' Cross-Mot. Summ. J."). Plaintiff opposes. Dkt. No. 24 ("Opp'n to Defs.' Cross-Mot. Summ. J."). The Court determined that this matter was suitable for resolution without oral argument and vacated the hearing pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS defendants' cross motion for summary judgment.

## BACKGROUND

Plaintiff Artem Denisov is a Russian citizen who is married to another man and allegedly faces torture and persecution for his sexual orientation if he is forced to go back to Russia. Dkt. No. 1 ("Compl.") ¶¶ 2, 7. Denisov allegedly escaped Russia and came to the U.S. seeking protection. *Id.* ¶ 7. Denisov filed an I-589 asylum application on November 27, 2020. *Id.* ¶ 1. On November 30, 2020, U.S. Citizenship and Immigration Services ("USCIS") issued a receipt notice documenting that it had received Denisov's asylum application and that the application was pending as of November 27, 2020. *Id.* ¶ 11; Dkt. No. 1-1. On January 9, 2021, USCIS issued a biometrics appointment for Denisov, which he attended and completed on February 2, 2021, but an interview

1   has yet to be scheduled.  Compl. ¶¶ 12-13; Dkt. No. 1-2.

2   According to defendants, Denisov's affirmative asylum application is currently being processed under the USCIS's scheduling system, which is primarily based on the "last-in first-out" ("LIFO") principle.  Defs.' Cross-Mot. Summ. J. at 2.  Between the years of 2014 and 2018, the USCIS Asylum Division adopted a "first-in first-out" ("FIFO") scheduling system where asylum interviews were scheduled in the order that the applications were filed.  Dkt. No. 23-1 ("Lafferty Decl.") ¶¶ 21, 24.  However, according to defendants, the FIFO scheduling system "led to a substantial increase in non-meritorious asylum applications, filed primarily to obtain an [employment authorization document]."  *Id.*  ¶ 22.  In January 2018, the Asylum Division returned to the LIFO scheduling system that USCIS and its predecessor agency had previously used to manage the asylum program in order to "stem the growth" of the backlog and "identify frivolous, fraudulent, or otherwise non-meritorious" claims sooner.  Lafferty Decl. ¶ 24; Dkt. No. 23-3 ("Kurlan Decl.") Exs. 2, 7.  By this time, USCIS faced a "crisis-level backlog" of 311,000 pending asylum applications.  Lafferty Decl. ¶ 27; Kurlan Decl. Ex. 7.  Under the LIFO scheduling system, affirmative asylum applications are prioritized for interviews as follows.  First, applications that were scheduled for interviews but required rescheduling; second, applications pending 21 days or fewer since filing; third, all other pending applications, starting with newer filings and working back.  Lafferty Decl. ¶ 25; Kurlan Decl. Ex. 2.

An applicant who believes that their case should be heard outside of USCIS's LIFO scheduling system may request expedited adjudication from the relevant asylum office for, among other reasons, urgent humanitarian reasons or significant public benefit.  Lafferty Decl. ¶ 33; Dkt. No. 23-2 ("Lehman Decl.") ¶ 17; Kurlan Decl. Exs. 1-2.  The decision to expedite "is within the sole discretion of USCIS."  Kurlan Decl. Ex. 1.

The asylum backlog began to accelerate again in 2022 and 2023.  Defs.' Cross-Mot. Summ. J. at 8.  USCIS cites a variety of reasons for the growth of the backlog, including: insufficient staffing; insufficient physical office space; shifting geopolitical realities such as a fundamental shift in global migration patterns; the reassignment of Asylum Officers to other urgent caseloads; receiving erroneously filed applications from noncitizens in removal proceedings over which

USCIS lacks jurisdiction; and a significant surge in applications filed by Colombian, Cuban, Haitian, Nicaraguan, and Venezuelan nationals. *Id.*; Lafferty Decl. ¶¶ 29, 36, 38-39. By the end of the second quarter of fiscal year 2024, the "affirmative asylum backlog totaled 1,161,686 applications." Lafferty Decl. ¶ 34. Along with other measures to address the backlog, USCIS asylum offices are now scheduling asylum interviews along a second track simultaneously with its LIFO system, assigning some of its limited asylum officer corps to complete applications pending in the backlog, starting with the oldest cases and working forward toward newer filings. Lafferty Decl. ¶¶ 31-32; Kurlan Decl., Ex. 2.

Denisov's affirmative asylum application falls within the third priority category of applications. According to USCIS records, Denisov has neither requested placement on the short-notice interview list nor expedited adjudication pursuant to the process set forth on USCIS's website for addressing urgent humanitarian emergencies. Lehman Decl. ¶¶ 16-17. Denisov has not alleged that he has sought advance parole to travel outside of the United States, and USCIS has no record of receiving a request for an advance parole document from Denisov. *Id.* ¶ 18.

On December 14, 2023, Denisov filed a petition for writ of mandamus and complaint for declaratory relief against defendants Alejandro Mayorkas, Secretary of Homeland Security, Ur M. Jaddou, Director of USCIS, and Attorney General Merrick Garland. *See* Compl. Denisov seeks an order from this Court requiring that defendants interview him for and adjudicate his asylum application, which has been pending for over three years. *Id.* ¶¶ 1, 3. Denisov seeks a writ of mandamus pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq. Id.* ¶¶ 15, 20.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters

3

on which the non-moving party will have the burden of proof at trial. *See id.* The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is mandated against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citations omitted).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The underlying facts are not in dispute. *See* Pl.'s Mot. Summ. J. at 4; Dkt. No. 9, Def. Answer ¶¶ 11-13. Rather, the parties dispute whether the Court has jurisdiction to review this claim, whether mandamus relief is available to Denisov, and whether USCIS's delay in adjudicating Denisov's asylum application is unreasonable. The Court examines each argument in turn.

### I. The Court Has Jurisdiction to Review Denisov's Claims

As an initial matter, defendants contend that the Court lacks jurisdiction to review Denisov's mandamus and APA claims "to the extent these claims assert that [d]efendants have breached a mandatory duty because USCIS does not have a duty to adjudicate an asylum application within a specific timeframe." Defs.' Cross-Mot. Summ. J. at 2. Defendants argue that the Immigration and Nationality Act ("INA") expressly disclaims any legally enforceable right against USCIS for an alleged failure to adjudicate an asylum application within "the aspirational timelines set forth in the statute." *Id.*; *see* 8 U.S.C. § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). Denisov concedes that federal regulations do not impose a set deadline for processing asylum applications but contends that Congress suggested a reasonable processing timeframe where interviews are to be scheduled no later than 45 days after filing of the application and adjudication of the application no later than 180 days after filing, absent exceptional circumstances. Pl.'s Mot. Summ. J. at 6 (citing 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii)).

The APA provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases in original).

Courts in the Ninth Circuit "have repeatedly declined to conclude that a private right of action exists to enforce the timing requirements of 8 U.S.C. § 1158(d)(5)(A)." *Su v. Mayorkas*, No. 23-cv-00566-KAW, 2023 WL 7209630, at *4 (N.D. Cal. Oct. 17, 2023) (collecting cases) (internal quotations omitted). However, "unlike other subsections of the INA, § 1158(d)(7) does not expressly preclude judicial review." *Varol v. Radel*, 420 F. Supp. 3d 1089, 1096 (S.D. Cal. 2019). Accordingly, courts in this circuit have repeatedly found that even though there is no private right of action to enforce the time frames set forth in 8 U.S.C. § 1158(d), district courts may still review the agency's actions under the APA. *See*, *e.g.*, *Su*, 2023 WL 7209630, at *4; *Fang Yan v. Dir.*, No. 2:22-cv-05846-ODW (MRWx), 2023 U.S. Dist. LEXIS 105115, at *8 (C.D. Cal. June 16, 2023);

*Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 957 (S.D. Cal. 2023); *see also Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999) ("In the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331.").[1]

Moreover, the Court's jurisdiction applies to the claims brought under the Mandamus Act and the APA alike:

> [W]hether jurisdiction is specifically predicated on the [M]andamus [Act] . . . or on the APA . . . makes little practical difference, as the result and the analysis that flow from either are the same. Where the relief the plaintiff is seeking is identical under either the APA or the [M]andamus [Act], proceeding under one as opposed to the other is not significant . . . Accordingly, if the Court has jurisdiction pursuant to one, it need not analyze jurisdiction with respect to the other.

*Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1161-62 (N.D. Cal. 2007) (citing *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Accordingly, the Court finds that it has jurisdiction to review the agency's actions with respect to both claims to the extent Denisov alleges that defendants have failed to act within a reasonable timeframe.

## II.   Mandamus Relief is Not Available for Denisov's Claims

The Mandamus Act allows a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy and is available . . . only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1998). All three of these prongs must be met to qualify for mandamus relief. *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003). And "[e]ven if the test is met, the district court still retains the discretion to deny relief." *Id.*

---

[1] One court in this district recently found that it lacked jurisdiction over an APA claim where the plaintiff alleged that the defendants unreasonably delayed a decision on her asylum application. *De Campos v. USCIS*, No. 23-cv-03434-NC, 2024 WL 671622 (N.D. Cal. Jan. 18, 2024). Although the Court acknowledges this split, the Court follows the reasoning and rulings of the numerous courts in this district and circuit that have held there is jurisdiction in similar cases.

1 Defendants contend that mandamus relief is unavailable to compel the scheduling of an 2 interview or adjudication of Denisov's asylum application because the INA does not provide a 3 private right of action, and, therefore, Denisov cannot satisfy the first prong of the mandamus test. 4 Defs.' Cross-Mot. Summ. J. at 12-13. Denisov asserts that his claim for relief is clear and certain 5 because he has a right to apply for asylum. Pl.'s Mot. Summ. J. at 5 (citing *Orantes-Hernandez v.* 6 *Thornburgh*, 919 F.2d 549, 553 (9th Cir. 1990)) ("It is undisputed that all aliens possess [a right to 7 apply for asylum] under the Act.").

8 District courts in California have repeatedly found that 8 U.S.C. § 1158(d)(5)(A) cannot 9 provide a basis for mandamus relief because, as previously discussed, the INA expressly precludes 10 a private right of action to enforce those timing requirements. *See* 8 U.S.C. § 1158(d)(7); *see*, *e.g.*, 11 *Xiaolian Zheng v. Mayorkas*, 4:23-cv-02707-KAW, 2024 U.S. Dist. LEXIS 6303, at *12 (N.D. Cal. 12 2024); *Reyes Briseda v. Lehman*, No. 23-CV-00495-TSH, 2024 WL 2112864, at *3 (N.D. Cal. May 13 8, 2024); *Wanyue Hong v. Curda*, 2023 U.S. Dist. LEXIS 216475, at *13 (C.D. Cal. Dec. 5, 2023); 14 *Lajin v. Radel*, 2019 U.S. Dist. LEXIS 125118, at *13-14 (S.D. Cal. July 26, 2019). Denisov has 15 not cited, and the Court has not found, any authority to the contrary. Thus, Denisov fails to satisfy 16 the first prong of the mandamus test, and relief cannot be granted..

17 Accordingly, the Court finds that Denisov fails to state a claim under the Mandamus Act, 18 and that defendants are entitled to summary judgment to the extent that relief is sought under this 19 statute.

21 **III. USCIS's Delay in Adjudicating Denisov's Asylum Application is Not Unreasonable**
22 **Under the *TRAC* Factors**

23 Defendants contend that Denisov fails to establish a claim for relief under the APA because 24 USCIS has not unreasonably delayed the adjudication of Denisov's asylum application as a matter 25 of law. Defs.' Cross-Mot. Summ. J. at 2. Denisov alleges that defendants have violated the APA, 26 5 U.S.C. § 555(b), which requires an administrative agency to adjudicate matters presented to it 27 "within a reasonable time." Compl. ¶ 20. The Ninth Circuit has adopted the following factor test 28 set out in *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*") to determine whether agency action

7

has been unreasonably delayed:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (citations and internal quotation marks omitted); *Indep. Mining Co.*, 105 F.3d at 507 (applying the *TRAC* factors in assessing whether relief under the APA was appropriate).

### A. Factor One: Rule of Reason

"The most important *TRAC* factor is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). This factor "requires that the time it takes for the agency to act is governed by a 'rule of reason.'" *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 U.S. Dist. LEXIS 205342, at *22 (N.D. Cal. 2020). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. C06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 934 (D.N.M. 1999)).

Defendants contend that the LIFO policy is a rule of reason that satisfies the first *TRAC* factor. Defs.' Cross-Mot. Summ. J. at 15. Denisov argues that the LIFO system is unreasonable because it is not reducing the backlog of cases and creates a system where applicants stuck in the backlog may never see their applications adjudicated. Opp'n to Defs.' Cross-Mot. Summ. J. at 2.

Courts in this Circuit have consistently found that LIFO is a rule of a reason. *See*, *e.g.*, *Varol*, 420 F. Supp. 3d at 1097 ("Defendants have convincingly asserted that LIFO is a 'sensible administrative response to the problem of increased frivolous, fraudulent, or meritless asylum filings that increase the overall caseload and extend wait periods for all applicants'"); *Singh v. Bardini*, No.

8

2:22-CV-01027-JAM-DB, 2023 U.S. Dist. LEXIS 125342, at *6 (E.D. Cal. July 20, 2023) (finding that LIFO is a rule of reason); *Reyes Briseda*, 2024 WL 2112864, at *5 (same). Moreover, defendants have explained the policy and historical reasons for the implementation of LIFO. *See generally* Lafferty Decl. Denisov cites one case in support of his position that LIFO does not constitute a rule of reason. However, the court in this case did "not decide one way or the other on the 'rule of reason' factor" because it found that the plaintiff had made no allegations as to the other crucial *TRAC* factors. *Ruan v. Wolf*, No. 19-cv-04063, 2020 WL 639127, at *6 (E.D.N.Y. Feb. 11, 2020).

There does come "a point where [a] seemingly infinite delay . . . becomes untethered from any discernable 'rule of reason.'" *Islam*, 32 F. Supp. 3d at 1072. District courts in this circuit "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019). Denisov's asylum application has been pending for over three years. While such a delay is understandably difficult for Denisov, it remains shorter than the delays that courts have typically found to be unreasonable. *See id.* On this record, the Court finds that the first factor favors defendants.

### B.      Factor Two: Congressional Timetable

The second *TRAC* factor indicates that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason." *TRAC*, 750 F.2d at 80.

Courts have acknowledged that Congress has indeed "provided a clear timetable for the processing of asylum applications" in 8 U.S.C. § 1158(d)(5)(A)'s expectation that initial interviews commence within 45 days. *Varol*, 420 F. Supp. 3d at 1097. Those same courts, however, have found that such "timing requirements are not mandatory" and do not "outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Id.* Moreover, Congress has "indicated that USCIS retains limited discretion as to the timing of the adjudication of asylum applications under exceptional circumstances." *Yan*, 2023 U.S. Dist. LEXIS 105115, at *11

(citing 8 U.S.C. § 1158(d)(5)(A)).  The Court thus finds that this factor is neutral.  *See Dawod v. Garland*, CV 23-3211-MWF (MRWx), 2023 U.S. Dist. LEXIS 140801, at *25 (C.D. Cal. Aug. 10, 2023) (finding the second factor neutral "because the INA lacks a private right of action to enforce the timelines set forth therein and also gives the USCIS some discretion").

### C. Factors Three and Five: Human Health and Welfare, and Nature of Interests

The parties discuss the third and fifth *TRAC* factors together, as will the Court.  *See Indep. Mining Co.*, 105 F.3d at 509 (referring to third and fifth *TRAC* factors as "overlapping").  These factors consider "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay." *Yan*, 2023 U.S. Dist. LEXIS 105115, at *12.

Denisov contends that these factors "weigh heavily" in his favor because the looming fear of being forced to return to Russia has weighed heavily on him and he seeks "a mandamus" for this reason, rather than to improve his economic situation.  Pl.'s Mot. Summ. J. at 7; Compl. ¶ 26. Defendants contend that Denisov has not identified any specific risks to his health and welfare, and his arguments of fear of persecution and lack of certainty are applicable to all asylum applicants. Defs.' Cross-Mot. Summ. J. at 20.  Additionally, defendants contend that these arguments ignore the fact that Denisov maintains safe refuge from his home country during the pendency of his asylum application and may remain in the U.S. without fear of removal while his application is pending. *Id.* "[T]he Court does not seek to minimize the delay [Denisov] has faced, but courts have repeatedly found that these *TRAC* factors favor the defendants, even where plaintiffs have alleged more specific harms."  *Reyes Briseda*, 2024 WL 2112864, at *6; *see also Yan*, 2023 U.S. Dist. LEXIS 105115, at *5 (finding insufficient plaintiff's allegations that the delay in processing her asylum application caused her fear, despair, preoccupation, and uncertainty and deprived her of freedom of movement and travel); *Teymouri v. USCIS*, No. 22-cv-07689, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) (finding insufficient allegations that the delay was extremely stressful and caused "irreparable harm" to the plaintiff who was suffering "significant emotional damage due to the uncertainty and worry" and noting that while the plaintiff's asylum application is pending there is no risk of being removed to his home country before final adjudication).  Thus, the Court finds that these factors

1  weigh in favor of defendants.

### D. Factor Four: Effect of Expediting Delayed Action

The fourth factor "provides that the court may consider the agency's competing priorities." *Indep. Mining Co.*, 105 F.3d at 511. Denisov alleges that the fourth factor weighs in his favor as he does not seek agency policy change, merely the adjudication of the application. Compl. ¶ 27. Moreover, Denisov contends that he "does not believe there are any competing priorities that would outweigh the harm of delay in his case and the unreasonableness of delay[.]" Pl.'s Mot. Summ. J. at 7. Defendants point to competing priorities including the diversion of Asylum Officers to other mandatory tasks and urgent caseloads, such as credible fear and reasonable fear screenings and other border-related workloads, along with the other asylum applications that have been filed, including those whose applications were filed before Denisov's. Defs.' Cross-Mot. Summ. J. at 22; Lafferty Decl. ¶¶ 29, 32; Kurlan Decl. Ex. 2.

Denisov fails to address these competing priorities or provide evidence to the contrary. Instead, Denisov contends that LIFO rather than claims of this nature is "destroying the 'line' about which the [d]efendants[] allege to be concerned." Opp'n to Defs.' Cross-Mot. Summ. J. at 4. Likewise, Denisov fails to address the fact that USCIS recently began scheduling asylum interviews along a second track simultaneously with the LIFO system that addresses the oldest cases in the backlog in chronological order. *See* Lafferty Decl. ¶¶ 31-32; Kurlan Decl. Ex. 2. Denisov has not demonstrated that the harm to his health and welfare exceeds that of the average asylum applicant. *See Yan*, 2023 U.S. Dist. LEXIS 105115, at *15 ("Moreover, [plaintiff] has not alleged facts which would justify the extraordinary remedy of moving her [a]pplication to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication") (citation and internal quotation marks omitted). As such, "granting relief to [Denisov] simply moves [him] to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." *Varol*, 420 F. Supp. 3d at 1098. "When expediting an agency's progress on one individual's application would necessarily negatively impact another application, Courts have held that plaintiffs' appropriate recourse is with Congress, not the courts." *Varzaghani*

11

*v. Mayorkas*, CV 23-1876-DMG (KESx), 2024 U.S. Dist. LEXIS 100269, at *11 (C.D. Cal. June 5, 2024) (citing *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Therefore, the Court finds that this factor favors defendants.

### E. Factor Six: Impropriety or Bad Faith

Lastly, the sixth *TRAC* factor states that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Denisov does not allege any impropriety or bad faith by defendants in connection with his application. *See* Compl. ¶ 28. Defendants contend that "[b]ecause [p]laintiff does not allege any impropriety, the sixth *TRAC* factor weighs in [d]efendants' favor or is neutral." Defs.' Cross-Mot. Summ. J. at 23. However, "[a]lthough the presence of intentional delay would strongly support [p]laintiff's argument, the opposite is not necessarily true for [d]efendants." *Liangda Feng v. Rand Beers*, 2014 U.S. Dist. LEXIS 33908, *13-14. As such, the Court finds that the sixth factor favors neither party.

\* \* \*

In sum, four factors, including the most important factor, favor defendants, and two are neutral. Weighing the *TRAC* factors, USCIS's delay in adjudicating Denisov's asylum application is not unreasonable. Accordingly, defendants are also entitled to summary judgment on this cause of action.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS defendants' cross motion for summary judgment.

**IT IS SO ORDERED**.

Dated: July 23, 2024

SUSAN ILLSTON
United States District Judge